# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| HARRIET WHITE o/b/o DW | ) | Case No. 5:09cv00009 |
|  | ) |  |
| *Plaintiff* | ) | REPORT AND |
| v. | ) | RECOMMENDATION |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) | By:   Hon. James G. Welsh |
| Commissioner of Social Security, | ) |         U. S. Magistrate Judge |
|  | ) |  |
| *Defendant* | ) |  |

On behalf of DW, a minor, Harriet White brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying the claim of D W for child's Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 1381 *et seq*. Jurisdiction of the court is pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g).

The Commissioner's Answer was filed on July 21, 2009 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered on the same date, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Seeking reversal of the adverse agency decision, Ms. White's argues on appeal that the administrative law judge ("ALJ") committed two fundamental decisional errors. It is her first

contention that DW's relevant functional limitations did met the domain criteria necessary to establish childhood disability pursuant to 20 C.F.R. § 416.926a(e)(2).  Secondarily, she argues that he erred in determining DW's diabetic, seizure and attention deficit hyperactivity conditions, neither met nor were functionally equaled the applicable limitations of an impairment listed in Appendix 1 of subpart P of part 404 of title 20 of the Code of Federal Regulations ("Listings").  Each party has moved for summary judgment, and after hearing the views of counsel, this case is now before the undersigned for a report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment on behalf of DW be granted, the Commissioner's motion for summary judgment be denied, the Commissioner's final decision denying plaintiff's application on behalf of DW be reversed, and the case remanded for the limited purpose of calculating and paying benefits consistent with the decision of the court.

## I.     Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to SSI.  "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)).  This standard of review is more deferential than *de novo*.  "It consists of more than a mere scintilla of evidence but may be somewhat

less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). Nevertheless, the court "must not abdicate [ its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.    Administrative History

The record shows that the plaintiff, on behalf of DW, protectively filed an SSI application on October 27, 2003 [1] alleging the child's disability since March 15, 2001. (R.16,51-52,440.) The claim was denied both initially and on reconsideration (R.16,26-41), and pursuant to a timely request a first hearing before an ALJ was held on July 26, 2005. (R.16,45-50.) Following the ALJ's issuance of an adverse decision; the plaintiff unsuccessfully sought Appeals Council review, and she then sought federal court review. (R.5-24,420-431,480-483.) Based on the agency's inability to locate the recording of the hearing, the case was remanded, [2] and a second administrative hearing was held on February 26, 2008. [3]  (R.479,484-489,492-497,458-478.) The ALJ again issued an

---

[1] At the time of the application DW was nine years of age and in the third grade. (R.17,19,443.)

[2] [*D W*] *by . . . Harriet White v. Barnhart*, (W.D.Va., 5:07cv00008).

[3] DW was present and represented by counsel; Harriet White was also present and testified. (R43-44, 458-459.)

adverse decision, and after unsuccessfully seeking administrative review [4] the plaintiff for the second time seeks court review. (R.440-458,432-436.)

In reaching his decision to deny the claim filed on behalf of DW, the ALJ utilized the agency's established evaluation process to determine whether an individual under the age of eighteen is disabled (R.440 *et seq*.) *See* 20 C.F.R. § 416.924. In his decision the ALJ determined that DW had multiple *severe* [5] impairments, including insulin dependent diabetes, migraine headaches, asthma, a seizure disorder, an attention deficit/hyperactivity disorder ("ADHD"), and a "mild" bipolar disorder. (R.443.) Based on his subsequent consideration of the six functional "domains" outlined in 20 C.F.R. § 416.926a(b)(1), the ALJ then concluded that these conditions, neither individually nor in combination, were functionally equivalent to a listed condition. [6] (R.443-457.)

III.   Facts

A.  Medical Records

---

[4] Pursuant to 20 C.F.R. § 416.1481 denial of the plaintiff's request for review means that the decision of the ALJ now stands as the Commissioner's final decision.

[5] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c)

[6] The Listing of Impairments ("the listings") is in appendix 1 of subpart P of part 404 of 20 C.F.R. It describes for each of the major body systems impairments that the agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525 and § 416.925.

4

DW's relevant medical records in this case document diagnoses of multiple chronic medical problems, including a depressive condition with neurovegetative symptoms, a sleep disorder,[7] ADHD, poorly controlled insulin-dependent diabetes since age 7, migraine headaches, asthma, and several seizure episode in 2003-2004. (R.94,125,132,146-156,167-168,182-183,188,209-248,251-307,346-349,381,540-640,641-644,645-648,650-656,677-682; *see also* R.466-470.)

Treatment of the plaintiff's diabetic condition since its diagnosis in March 2002 has been primarily through the Pediatric Diabetes Clinic at the University of Virginia Medical Center ("UVAMC"). Since its diagnosis, the plaintiff has been insulin-dependent, and complications related to this condition have resulted in several hospitalizations over the subsequent four and one-half years. (R.132-133,158-162,166-181,207-208,210,218-219,223-233,326-332,347-348,387-389,541-640.)

Similarly, treatment of the plaintiff's seizure disorder has been primarily through the UVAMC's Pediatric Neurology Clinic. The results of an EEG in October 2003 suggested potential epilepsy, and the results of an MRI study four months later demonstrated some right frontal cortical dysplasia (malformation) associated with pediatric epilepsy conditions. (R.215,234-238,244-246,248,251-307.) Since her first seizure in August 2003, the plaintiff has been treated with Topamax, which her mother has reported to have improved the condition; however, as her mother also reported DW continues to have "starring spells" and aggressive outbursts. (R.244-248,326-343.)

---

[7] In June 2005 Dr. Pearl Yu (University of Virginia Medical Center, Dept. Of Pediatrics) evaluated DW's sleep disorder and diagnosed her condition to be a "delayed sleep syndrome and long sleep requirement." (R.381.)

Despite finding that DW's symptoms were "fully credible," based on the limited treatment record available to them in early 2004 state agency reviewers considered her condition to have only some negative impact on her health and well-being. (R.314-325.) In contrast, in January 2005 Dr. Lyons, one of DW's treating neurologists, described her seizure condition as a "very significant" interference with her daily activities, likely to disrupt her school performance, and incapable of any high stress activities. (R.309-312.)

Based on a psychiatric assessment at UVAMC in November 2004, DW's mental health issues were diagnosed as an anxiety, depression and a personality change associated with her cortical dysplasia. (R.244-248.) Elavil was prescribed for her depression, and psychotherapy was suggested. (R.248, 251-254.) Based principally on the combined effects of her ongoing neuro-vegetative symptoms and her difficulties concentrating and staying focused, Dr. Michael Hoffman, has consistently assessed DW's overall level of functioning to be in the range of 55-60 [8]. (R-650-657,677-682.)

Consistent with Dr. Hoffman's assessment of the severity of DW's mental health symptoms, following a consultive psychological evaluation in September 2007, De. David Leen concluded that DW overall functioning to be 51 on the GAF scale.(R.641-644.)

---

[8] A Global Assessment of Functioning ("GAF") score in the range of 51 to 60, indicates that the individual has moderate symptoms or moderate difficulty in social or occupational functioning (*e.g.,* few friends, conflicts with peers or co-workers) and represents the clinician's judgment of an individual's overall level of functioning. The GAF scale ranges from zero to 100 and is used by mental health clinicians and doctors to represent a judgment of an individual's overall level of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Diagnostic and Statistical Manual of Mental Disorders Fourth Edition*, ("DSM-IV"), 32 (American Psychiatric Association 1994).

**B. School Records**

Due to her multiple chronic health problems, DW's school records show that she has consistently received special educational services pursuant to an Individualized Education Program ("IEP") which have provided her with assignment and testing modifications and individual assistance from a special education teacher. (R.403,657-676.) Despite this specialized educational support, DW has failed to make appropriate academic progress, and at the time of the ALJ's decision DW was failing her Science course and was receiving program marks of "D" in Math, Reading, English, and Computer Techniques. (R.657.)

As also outlined in the 2007 (R.658-666) and in the 2008 (R.667-676) teacher questionnaire responses, DW's educational difficulties have been significant and persistent in multiple IEP assessment domains. On an ongoing basis, she has exhibited serious (or "very serious") problems acquiring and using information, serious (or "very serious") problems attending and completing tasks, "obvious" problems interacting and relating with others, "obvious" problems caring for herself, and difficulties remaining on task and staying focused "even with continuous prompting." (*Id.*; *see also* R.384.) Jennifer Jones, DW's special education teacher, has additionally noted DW's numerous health-related absences

**IV. Analysis**

**A.**

In her brief and in her counsel's oral argument, the plaintiff makes a compelling argument that the ALJ failed to appreciate the complex nature of DW's multiple health related problems and thereby erred in making the finding that she did not have the requisite *marked* or *extreme* limitations

7

to equal functionally any listed impairment.

Under the Social Security Act, an individual under the age of eighteen is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Pursuant thereto, the agency created a three-step evaluation process by which this assessment is to be made. 20 C.F.R. § 416.924(a).

Utilizing this evaluation process, at the third sequential decisional step the ALJ concluded that DW's impairments did not "*meet, medically equal, or functionally equal*" an impairment listed in Part B of Appendix 1 of Subpart P of the agency's regulations. 20 C.F.R. § 416.924(d) (emphasis in original). Otherwise stated, the ALJ concluded that the child neither had an *extreme* [9] limitation in one of the six functional domains [10] nor a *marked* [11] limitation in two of these six domains. 20 C.F.R. § 416.926a.

---

[9] A limitation is "extreme" when it "interferes very seriously with [ones] ability to independently initiate, sustain, or complete activities," and ones "day-to-day functioning may be very seriously limited when [ones] impairment(s) limits only one activity or when the interactive and cumulative effects of [ones] impairments limit several activities. 'Extreme' limitation also means a limitation that is 'more than marked;' . . . [h]owever, 'extreme limitation' does not necessarily mean a total lack or loss of ability to function." 20 C.F.R. § 926a(e)(3).

[10] The six domains are: (1) acquiring and using information: (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b).

[11] A limitation is "marked" when it "interferes seriously with [ones] ability to independently initiate, sustain, or complete activities," and ones "day-to-day functioning may be seriously limited when [ones] impairment(s) limits only one activity or when the interactive and cumulative effects of [ones] impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2).

In making this assessment in DW's case, the ALJ concluded that she had "no limitation" in the domains of moving about and manipulating objects and "no limitation" in the domain of caring for herself. (R.454-456). In each of the other domains (health and physical well-being, interacting and relating with others, acquiring and using information, and attending and completing tasks) the ALJ concluded that DW's limitations were "less than marked." (R.452-454,456-457).

On appeal, the plaintiff contends that the ALJ's "less than marked" assessments in these four domains are not supported by substantial evidence. *Inter alia* the plaintiff notes that three treating physicians (Dr. Pearl Yu, [12] Dr. Michael Hoffman and Dr. Paul Lyons [13]), and one a consulting psychologist (Dr. David Leen) have separately concluded DW's multiple health problems have a significant negative impact on her attention and learning. And to underscore the appropriateness of these medical assessments, the plaintiff points to multiple supporting observations by her teachers (R.658-676) and to her persistent academic difficulties. (R.657, 665.)

Additionally, the plaintiff points-out that the ALJ's adverse findings in these four domains were based on erroneous speculation. Despite the fact that the teacher questionnaires contain clear and specific instructions informing the teacher that it was 'IMPORTANT" for the teacher to make his (or her) assessment of DW's level of functioning on the basis of a comparison of her "functioning to that of a same-aged children who do not have impairments" (R.665,674), the ALJ decisionally rejected them on the grounds that they were based on a "misinterpretation of the forms

---

[12] UVAMC,

[13] UVAMC

9

and levels of functioning." (R.451.) On review, there is simply nothing in the record to suggest such an "misinterpretation.

Had the ALJ found DW to have "marked" limitation in any two of these domains, she would have medically qualified to receive SSI. This determination, deciding whether to classify a limitation as "marked" or "less than marked," is obviously is a judgment call based on the evidence presented in the record, and it is the ALJ's obligation to assess the record evidence honestly and rationally and to explain his conclusion clearly with reference to the evidence considered. *See e.g., Hays v. Sullivant*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990); *Taylor v. Weinberger*, 528 F.2$^d$ 1153, 1156 (4th Cir. 1975); SSR 96-3p. Therefore, if the record supports his findings and if he sufficiently explained his rationale, it is not the court's role to re-weigh the evidence simply because there is other evidence that could support a different view. *See King v. Califano*, 615 F. 2$^d$ 1018, 1020 (4th Cir. 1980); *Pagan v. Secretary, HHS*, 819 F.2$^d$ 1 ,3 (1st Cir. 1987). At a minimum, however, in the case now before the court, the ALJ's conclusions that DW has no decisionally significant limitations in the domains of health and physical well-being and in the domain of attending and completing tasks are neither adequately explained nor supported by substantial evidence.

### *1. Health and Physical Well-being Domain*

Based solely on his finding that DW's multiple severe health conditions are "generally . . . controlled with appropriate treatment," the ALJ found her limitations in the health and physical well-being domain not to be of marked [14] severity. (R.457.) This conclusion is neither supported by substantial evidence nor is it consistent with DW's entire medical history.

---

[14] *See* footnote 11.

*Inter alia*, the medical record in this case amply documents DW's long history of poorly controlled childhood diabetes, a sleep disorder which required a long sleep requirement, and a seizure condition which "very significant[ly]" interfered with her daily activities. Likewise, the medical record is replete with references to the negative impact of these conditions on DW's health and well-being. By any pertinent measure, therefore, the record in this case appears to demonstrate DW's "marked" limitations at the least in two domains, and the court, therefore, is obligated to is conclude that the ALJ's contrary finding not to be supported by substantial evidence.

### 2. *Attending and Completing Tasks Domain*

Based solely of the fact that DW was at "an age-appropriate grade level." the ALJ similarly found her limitations in the attending and completing tasks domain not to be of marked severity. (R.453.) This finding is predicated on the ALJ's assumption that DW was educationally progressing in line with her peers. In fact, however, she was receiving educationally significant special assistance pursuant to an IEP which included assignment and testing modifications and the individualized assistance of a special education teacher. (R.403,657-676.) Despite the receipt of ths special assistance and contrary to the ALJ's finding, at the time of the second administrative hearing DW was in fact failing in her school work. (R.657.)

In addition, the ALJ's finding is directly contradicted by the medical opinions of Drs. Yu, Hoffman, Lyons and Leen, and it is similarly contradicted by the opinions and recorded observations of her teachers. Each of these individuals separately reported that DW's multiple health problems in fact had a significant negative impact on her attention and learning.

Unless this evidence is completely discredited or ignored, one is compelled to conclude that substantial evidence does not support the ALJ's contrary finding that DW's attention and learning limitations were of less than marked severity. This evidence, from three treating physicians and one examining psychologist, is well-supported in the record and is consistent with the other substantial evidence. *See* 20 C.F.R. § 416.927(d)(2). Therefore, one is again compelled to find that DW's limitations in the domain of attending and completing tasks are in fact of "marked" severity and interfere seriously with her ability independently to initiate, sustain, or complete activities.

B.

In this case the Commissioner does not dispute that fact that DW has multiple severe impairments, including *inter alia* a seizure disorder. He does, however, vigorously challenge the plaintiff's contentions on appeal that the ALJ erred by findings that DW's seizure disorder neither met nor medically equaled either Listings 111.02 (convulsive epilepsy) or Listing 111.03 (non-convulsive epilepsy).

In relevant part, in addition to a diagnosis of epilepsy, to establish the requisite severity pursuant to Listing 111.02, a child must have a medical history evidencing

> more than one major motor seizure per month despite at least three months of prescribed treatment, [w]ith: (1) [d]aytime episodes (loss of consciousness and convulsive seizures); or (2) [n]octurnal episodes manifesting residuals which interfere with activity during the day.

Similarly, in addition to an established diagnosis of epilepsy, to establish the requisite severity pursuant to Listing 111.03, a child must have a medical history evidencing

12

more than one minor motor seizure per week, with alteration of awareness or loss of consciousness, despite at least three months of prescribed treatment.

In the case now before the court, the ALJ concluded that DW's seizure disorder "[was] not accompanied by seizures of the frequency and intensity" necessary to meet or equal the criteria of either of these impairments. (R.443.) As support for this opinion, the ALJ mentioned only the fact that in October 2006 she had experienced a seizure-free period of approximately one year. (R.447; *see* 566.) He failed to consider or even mention, however, the January 2005 seizure assessment of Dr. Paul Lyons, a treating neurologist. And this failure leaves the ALJ's opinion concerning listing-level severity of DW's seizure disorder open to serious question. *See Young v. Astrue*, 2009 U.S. Dist. LEXIS 58038, *14 (D.N.J., 2009).

Based on his treatment history, Dr. Lyons reported that DW experienced seizure activity approximately weekly and that it "very significant[ly]" interfered with her activities, including her school performance and her ability to maintain focus. (R.309-313.) This evidence is patently relevant in this case, and the ALJ was obligated to explain his reasons either for discounting or rejecting it. *Gilley v. Bowen*, 1988 U.S. Dist. LEXIS 18255 *6 (W.D.Va., 1988). *See e.g., Walker v. Bowen,* 889 F.2$^d$ 47,50 (4th Cir. 1989); *Arnold v. Secretary, HEW*, 567 F2$^d$ 258, 259 (4th Cir. 1977). Unless this obviously probative evidence was considered and sufficiently explained by the ALJ, the court on review cannot say that the conclusion of non-listing severity is supported by substantial evidence and reached through application of the correct legal standard. *Arnold v. Secretary 567 F.2$^d$ at 259; White v. Astrue,* 2009 U.S. Dist. LEXIS 103877 *10-11 (W.D.Va., 2009). Thus, but for the lack of substantial evidence to support the ALJ *less than marked* limitations outlined in section "A" above,

remand of this case would be necessary.

V.      **Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is not supported by substantial evidence;

2. The record demonstrates that DW has the multiple "severe" impairments identified by the ALJ in his written decision;

3. The ALJ's finding that DW's limitations in the *health and physical well-being* domain is not supported by substantial evidence;

4. Substantial evidence in the record demonstrates that DW's limitations in the *health and physical well-being* domain are of "marked" severity;

5. The ALJ's finding that DW's limitations in the *attending and completing tasks* domain is not supported by substantial evidence;

6. Substantial evidence in the record demonstrates that DW's limitations in the *attending and completing tasks* domain are of "marked" severity;

7. The ALJ failed to consider fully and properly the seizure assessment of Dr. Paul Lyons, a treating neurologist;

8. The ALJ's finding concerning the listing-level severity of DW's seizure disorder is not supported by substantial evidence;

9. The plaintiff has met her burden of proving DW's medical disability as alleged in her SSI application; and

10. The final decision of the Commissioner should be reversed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered REVERSING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the plaintiff on behlaf of DW, DENYING the Commissioner's motion for summary judgment, and REMANDING this case solely for the purpose of calculating and paying SSI.

Should the remand of this case result in the award of benefits, plaintiff's counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) within which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the agency; provided, however, any such extension of time **would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within

fourteen (14) days hereof.  **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 27th day of January 2010.

           /s/    *James G. Welsh*
United States Magistrate Judge